JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARENA FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of RONNEY DANIELS and IGNACIO BRACHE,

         Plaintiffs/Petitioners,

         v.

PIGSKIN, LLC (formerly d/b/a TAMPA BAY STORM),

         Defendant/Respondent.

Case No. 8:10-CV-01062

**JUDGMENT CONFIRMING FINAL ARBITRATION AWARD**

1    Arena Football League Players Association, on its own behalf and on behalf

2  of Ronney Daniels and Ignacio Brache, (collectively "Petitioners") petitioned this

3  Court to confirm a December 9, 2009 arbitration award, attached hereto as Exhibit

4  A, that was rendered in an arbitration between Petitioners and defendant Pigskin,

5  LLC (formerly d/b/a Tampa Bay Storm) (the "Award").

6    On September 7, 2010, the Court issued an order granting Petitioner's Petition

7  to Confirm the Award.  Having so granted the Petition, this Court hereby enters the

8  Award as a Judgment of this Court, and ORDERS, ADJUDGES AND DECREES

9  that the Award shall have the same force and effect as any other Judgment of this

10 Court and may be enforced accordingly.

11

12

13

14

Dated:  October 13, 2010

15    _____

The Honorable James V. Selna

16    United States District Court Judge
Central District of California

17

18

19

20

21

22

261705

23

24

25

26

27

28

# Exhibit A

| IN THE MATTER OF THE ARBITRATION BETWEEN | * | GRIEVANCE: WORKERS |
|---|---|---|
| | * | COMPENSATION - FLORIDA |
| | * | |
| PIGSKIN, LLC D/B/A THE TAMPA BAY STORM | * | |
| | * | |
| | * | |
| v. | * | |
| | * | GRIEVANTS: IGNACIO BRACHE AND |
| | * | RONNEY DANIELS |
| ARENA FOOTBALL LEAGUE | * | |
| PLAYERS ASSOCIATION | * | |
| | * | |
| AND | * | |
| | * | |
| IGNACIO BRACHE AND RONNEY DANIELS | * | ARBITRATOR'S FILE NO: 2009.3047 |

# FINAL OPINION AND AWARD

## ARBITRATOR: JACK CLARKE

## AWARD DATE: DECEMBER 9, 2009

## APPEARANCES FOR THE PARTIES

**STORM**

Robert W. Bleakley, Esq., The Bleakley Law Firm, Tampa, Florida*

**AFLPA AND PLAYERS**

Adam J. Kaiser, Esq., Dewey & LeBoeuf, LLP, New York, New York

Todd Flanagan, Esq., Staff Counsel, AFL Players Association, Washington, D.C.

---

*Mr. Bleakley represented the Storm until December 8, 2009.

Exhibit A
Page 2

## PROCEDURAL HISTORY

Pigskin, LLC d/b/a The Tampa Bay Storm is hereinafter referred to as "Storm". The Arena Football League Players Association is hereinafter referred to as "AFLPA". Ignacio Brache and Ronney Daniels are hereinafter referred to individually as "Brache" and "Daniels", respectively, and collectively as "Grievants". The Arena Football League, LLC is hereinafter referred to as "AFL".

The undersigned issued an Interim Opinion and Award in this matter dated May 20, 2009 (hereinafter "Interim Opinion and Award" or "Interim Award"). That Interim Opinion and Award is hereby adopted and incorporated by reference as if set out in full at this point.[1]

As noted in the Interim Opinion and Award, the Arbitrator awarded that he was "not obligated to follow System Arbitrator's Wittenberg's June 18, 2008 and August 6, 2008 decisions and that he should not do so." The Arbitrator retained jurisdiction of the present grievance "until July 17, 2009 for the purpose of receiving requests for further proceedings regarding this grievance."

---

[1] The instant grievance was filed by the Storm against the Grievants and the AFLPA. Neither the ALFPA nor either of the Grievants sought to add the AFL as a party.

Although the AFL appeared in this matter prior to issuance of the Interim Opinion and Award in the sense that two attorneys representing it participated in a telephone conference call on February 13, 2009, it did not brief or otherwise participate in the proceedings before this Arbitrator regarding this grievance.

The Arbitrator gave the AFL an opportunity to participate in proceedings subsequent to issuance of the Interim Opinion and Award through emails to one of its former attorneys, who is now a consultant to it. Similarly, counsel for the Storm advised the Arbitrator by letter dated September 9, 2009 that he had "asked the AFL to state its position and/or to provide a response to the AFLPA's memorandum letter." When the Arbitrator had received nothing from the AFL as of November 2, 2009, he concluded that it had elected not to exercise the right apparently provided it in Article IX, Section 2(a) of the 2004 Agreement to participate in all arbitration proceedings.

Exhibit A
Page 3

The Storm filed a Motion for Recusal and/or Reconsideration with certificate of service dated July 17, 2009. As the title of the motion implies, the Storm asks the Arbitrator to recuse himself and/or to reconsider the decision set out in the Interim Opinion and Award.[2]

The AFLPA and Grievants submitted a letter Objection to the Storm's Motion for Recusal and/or Reconsideration dated July 30, 2009.

The Storm replied to the AFLPA and Grievants' Objection by letter dated July 31, 2009.

---

[2] One of the bases for recusal set out in the Motion for Recusal and/or Reconsideration was an allegation that the Arbitrator had decided the decision set out in the Interim Opinion and Award in 3.25 hours, citing the Arbitrator's invoice as evidence of the time used. After the Arbitrator pointed out that his invoice read 3.25 days and not 3.25 hours, counsel for the Storm submitted a letter to the Arbitrator via email dated July 27, 2009 wherein he politely apologized "for this mistake" and withdrew that factual allegation. (The letter itself is dated March 27, 2009, an obvious typographical error.) Counsel went on to write: "[T]he Storm otherwise stands by all remaining allegations in its July 17, 2009 motion."

## POSITIONS OF THE PARTIES

### STORM

The Storm contends that Arbitrator Clarke violated Art. IX, Section 1(c) of the

2004 Agreement. In support of this argument, the Storm contends:

Article IX, Section 1 of the parties' CBA clearly sets forth the extent to which a system arbitrator has jurisdiction and authority over a "non-injury" grievance. This provision explicitly states, "The System Arbitrator *shall not* have jurisdiction or authority to ... detract from, or alter in any way, the provisions of this Agreement ...." See, Art. IX, §1(c).

This Arbitrator's incorrect conclusion - i.e., the CBA did not "clearly and unmistakably" waive Florida team players' rights to sue Florida teams for out-of-state workers' compensation benefits - effectively nullifies Article XXXIX, Section 1 and the entire Implementation Agreement. In other words, the May 20, 2009 Award catastrophically "detracts from" the parties' bargained for system of arbitrating *all* claims against Florida teams.

The language and operative thrust of the CBA, which undeniably includes the Implementation Agreement, 2 could not be more "clear and unmistakable." Indeed, the Implementation Agreement's very first sentence states, "This Agreement by and between [the AFL and the AFLPA] ... deals with *local processing* of workers' compensation claims made to the Orlando Predators and the Tampa Bay Storm (each, a 'Florida Team')". See, Implementation Agreement at pg. 1.

In relevant part, Section 2 then provides, "It is the intent of the parties to avoid litigation of workers' compensation claims by routinely resolving *any issues or disputes* which may arise between the Florida Team and the player through a fair and reasonable application of the Florida Workers' Compensation Law" Id. at §2. Although the AFLPA contends that arbitration is required only when a player deliberately makes a claim for Florida "equivalent benefits," the preceding language is not nearly so narrow. To the contrary, this provision clearly requires application of Florida law to *any* workers' compensation claim or dispute a player might have against a Florida team.

Section 3 provides even further corroboration, as follows: "In the event a dispute arises ... the procedures set forth below [i.e., for arbitrating workers' compensation claims under Florida law] will be followed ..." Id. at §3. The parties explicitly agreed that "establishment of a

Page 3

local arbitration system is a more desirable method of determining entitlement to benefits." Id.

Likewise, Section 14 states, "[T]he terms of this Agreement shall ... apply to resolve *any and all workers' compensation claims* for injuries occurring in or after the 2003 League Year ...". This language plainly vindicates the Storm's position that when a Florida player seeks workers' compensation benefits from a Florida team, it is, by fundamental definition, a Florida claim. Meanwhile, this Arbitrator's Award effectively rationalized this language right out of existence.

Article XXXIX, Section 1 of the formal CBA is equally clear. In relevant part, it states, "In any state where workers' compensation coverage is not compulsory [i.e., Florida] ... such benefits will be equivalent to those paid under the compensation law of the state in which his Team is located [i.e., Florida, yet again]." See, Art. XXXIX, §1.

Even the standard player contract states, "Any dispute involving ... any provision of this contract will be exclusively submitted to final and binding arbitration in accordance with the grievance arbitration procedure called for in the [CBA]." See, Standard Player Contract at ¶ 19. Once again, the contract further provides, "The CBA and any other collective bargaining agreement ... are hereby incorporated herein as if fully set forth herein." Id. at ¶ 21.

This crystal clarity is precisely why Ms. Wittenberg found, "[T]he language of the Agreement clearly and unequivocally contains a clause requiring the parties to arbitrate *all* workers' compensation claims connected with a player's employment with a Florida team through arbitration". See, 6/18/08 Award at pg. 9. This reasoning explicitly includes the players' contracts. *See, id.* at pg. 12 ("[T]he players are bound by the [CBA] and the Implementation Agreement, including being bound by virtue of their individual player contracts").

These provisions leave no room for the argument, which this Arbitrator obviously accepted, that mandatory arbitration under the CBA and Implementation Agreement only applies when deliberately invoked by an injured player. Instead, as confirmed by his individual contract, the injured player necessarily invokes these provisions the moment he asserts a workers' compensation claim against any Florida team. (Paragraph numbers and references to the addition of emphasis, appendices to the motion and footnote omitted without indication.)

The Storm contends that Arbitrator Clarke improperly disregarded persuasive if

not binding precedent from other AFL-AFLPA arbitrators. In support of this argument,

the Storm contends:

> As all parties are well aware, the instant grievance is hardly the first litigated matter arising under the CBA and Implementation Agreement. Without rehashing its arguments on the authoritative effect of Ms. Wittenberg's June 18, 2008 award, the Storm would still note the extent to which the May 20, 2009 Award does violence to multiple opinions and awards entered by imminently qualified and experienced arbitrators.

> Even on the narrow conclusion that the CBA was insufficiently "clear and unmistakable" to require arbitration of all workers' compensation claims against the Storm, this Award cannot be reconciled with such earlier precedent. This certainly includes, but is not limited to, the matter of *Melvin Cunningham vs. The Tampa Bay Storm* (over which Ms. Wittenberg was the System Arbitrator for several years).

> By written order dated November 9, 2004, a panel of three arbitrators (Seth Abrams, Esq.; Mark L. Zientz, Esq.; and Ramon Malca, Esq.) rejected an ambiguity argument that was substantially similar to the one this Arbitrator found so persuasive. In that proceeding, the Florida team unsuccessfully argued, "[T]he arbitration agreement found in the collective bargaining agreement and, specifically, Article XXXIX, Section 3 is vague and ambiguous." *See*, 11/9/04 Order at pg. 3, §3.

> This panel of three experienced arbitrators summarily "rejected" this argument and found, "Equivalent benefits means those benefits found under the appropriate Florida Workers' Compensation statutes in effect at the time of the respective accidents." Id. As set forth above, the language requiring arbitration, under Florida law, of all workers' compensation claims against the Storm is equally free from ambiguity.

> When the panel's order came before Ms. Wittenberg on appeal, she further clarified that "The Implementation Agreement deals with the processing of workers' compensation claims made to the Tampa Bay Storm and the Orlando Predators." *See*, Exhibit B at pg. 3. It remains noteworthy that, consistent with its plain language, Ms. Wittenberg broadly applied the Implementation Agreement to claims against Florida teams (and not, as the AFLPA now argues, solely to deliberate claims for Florida "equivalent benefits").

> Ironically, the AFLPA defended Melvin Cunningham's claim against the Storm by arguing, "[T]he Implementation Agreement is part of the

Exhibit A
Page 7

[CBA] pursuant to the National Labor Relations Act (NLRA) and ... preempts any contrary provisions in the Florida Statutes." Id. at pg. 7. Incredibly (given its present opposition to the CBA and federal preemption as undue interference with rights arising under California law), the AFLPA even argued, "[A]pplication of Florida law in his case would constitute impermissible state interference with the parties' collective bargaining process." Id.

The AFLPA even went so far as to cite prior "professional football" decisions that held, "[C]ollectively bargaining [sic] workers' compensation provisions preempt conflicting state law." Id. Notwithstanding the hypocrisy of the AFLPA's present (and flagrantly contradictory) stance, Ms. Wittenberg correctly agreed the CBA was "clear and unambiguous in entitling Florida players to the same workers' compensation benefits that are set forth in the Florida Workers' Compensation Law." Id. at pg. 13.

Despite this prior arbitral jurisprudence on substantially similar issues, with virtually identical parties, by no fewer than four eminently qualified arbitrators, the May 20, 2009 Award abruptly lurches in the polar opposite direction.... (Reference to time used by Arbitrator omitted from this paragraph; see footnote 2 above.) (Paragraph numbers and references to the addition of emphasis and appendices to the motion footnote omitted throughout the quotation without indication.)

The Storm contends that Arbitrator Clarke violated Article IX, Sections 3(a) and

4(b) of the 2004 Agreement. In support of this argument, the Storm contends:

In some ways, this portion of the May 20, 2009 award is the most troubling. Ever since the April 1, 2008 oral argument before Ms. Wittenberg, the AFLPA has consistently "cried foul" over the alleged procedural deficiencies that pre-dated her June 18, 2008 award. More specifically, the AFLPA complained that Ms. Wittenberg disregarded proper procedure under Article IX, deprived the union and players of due process, and improperly went beyond the pending issues (to a premature decision on the merits).

Since the current Arbitrator purportedly succeeded Ms. Wittenberg, the only issue raised by the AFLPA is whether her prior award is (or should be) binding, and whether the instant proceedings must (or should be) restarted ab initio. Meanwhile, without the very same discovery and procedures the AFLPA adamantly demanded before Ms. Wittenberg could reach the merits, this Arbitrator has identically: (a) decided the preliminary issue (i.e., whether the June 18, 2008 award is even subject to reconsideration); and (b) summarily disposed of the Storm's grievance by deciding waiver under the CBA is insufficiently "clear and unmistakable."

Exhibit A
Page 8

As the AFLPA has repeatedly noted, Article IX, Section 3(a) states, "In any of the disputes over which the System Arbitrator has authority, the parties shall have a right to prompt and reasonable discovery." Likewise, "[N]o later than ten (10) days prior to the hearing, each party will submit to the other a copy of all documents, reports, and records relevant to the dispute." Id.

The AFLPA has also consistently cited Article IX, Section 4(a), which states in relevant part, "At the hearing, the parties to the grievance and the AFLPA and the AFL will have the right to present, by testimony or otherwise, and subject to Section 3 above, any evidence relevant to the grievance." For example, the AFLPA insisted that, if proper discovery had preceded the June 18, 2008 award, Ms. Wittenberg would have known that the CBA's neutral arbitration procedures mirror those of the NFL, in which case NFLPA players routinely sue the Miami Dolphins for out-of-state workers' compensation benefits.

At the present time, such discovery would equally prove that the Miami Dolphins are, in fact, now insisting that injured players arbitrate all such claims under Florida law. See, e.g., 6/3/09 Arbitration Order in *Miami Dolphins v. AFLPA*. If, as the AFLPA so emphatically argued before, the System Arbitrator must afford due process to the parties before reaching the merits, the Storm is no less entitled to all of the CBA's procedural guarantees.

The Storm contends that Arbitrator Clarke lacks authority over those matters that

remain within System Arbitrator Wittenberg's jurisdiction. In support of this argument,

the Storm contends:

Finally, the Storm re-asserts its position that, despite her resignation, the instant grievance remains within Ms. Wittenberg's jurisdiction. See, Art. IX, §7 ("The System Arbitrator whose term has ended, and who has not been dismissed by mutual agreement of the AFL and the AFLPA ... shall continue to hear all disputes filed prior to the date of the appointment of a new System Arbitrator").

The Storm has never consented to Ms. Wittenberg's departure from these proceedings, nor has it ever agreed to the instant Arbitrator as her successor. Certainly, the impropriety of her replacement is manifestly evident by the fact: (a) Ms. Wittenberg diligently governed these proceedings before finding the CBA, Implementation Agreement, and player contracts "clear and unambiguous"; and (b) this Arbitrator elects to

reconsider her rulings and summarily finds the very same documents insufficiently "clear and unmistakable."

In other words, the Storm maintains its objection to the current Arbitrator's authority and jurisdiction even to enter the May 20, 2009 Award. *See, e.g.,* Article I (ffff) (Defining "System Arbitrator" as "the arbitrator appointed and authorized by this Agreement to hear and resolve all disputes (other than Injury Grievances) as provided in this Agreement") (Paragraph numbers and references appendices to the motion omitted without indication.).

The Storm concludes its brief-in-chief in support of its Motion for Recusal and/or

Reconsideration as follows:

Given the inexhaustible fervor with which the AFLPA recycled multiple motions for reconsideration of Ms. Wittenberg's June 18, 2008 award, it would dare not suggest that the Storm may not seek rehearing of this Arbitrator's May 20, 2009 Award. See, Art. IX, §5(b) ("The parties may request the System Arbitrator to reconsider any award, and the System Arbitrator shall have the authority to reconsider any award"). For all of the foregoing reasons, this Arbitrator should indeed recuse himself from this matter and/or reconsider the factually and legally erroneous award of May 20, 2009.

WHEREFORE, the Petitioner, PIGSKIN, LLC d/b/a THE TAMPA BAY STORM, respectfully moves for entry of an Order, Opinion, and/or Award: (a) Granting the instant Motion for Recusal and/or Reconsideration; (b) Recusing Jack Clarke as System Arbitrator over the Storm's Article IX grievance against the AFLPA, Ignacio Brache, and Ronney Daniels; (c) Granting reconsideration of Jack Clarke's May 20, 2009 "Interim Opinion and Award"; (d) Affirmatively vacating this Award as the byproduct of analysis that is both factually inaccurate and legally erroneous; and (e) Granting such other relief as may be just and proper.

In its reply letter of July 9, 2009, the Storm contends:

[W]hile the AFLPA maintains its incorrect argument that collective bargaining cannot affect substantive rights arising under state law … the Storm will simply reassert the illegality of the AFLPA's position, as well as its failure to distinguish *Preston v. Ferrer* and such other authority arising from the Federal Arbitration Act.

Finally, the Storm takes particular exception to the AFLPA's assertion, at pg. 7 of its brief, that "The Storm does not [and could not] contest this ruling [i.e., that waiver of the players' statutory state law rights

Page 8

was not 'clear and unmistakable']." In fact, the entire basis for the Storm's motion is that:

(a) Federal law entirely supports the notion that state law rights are waivable under a CBA;

(b) The AFLPA did, in this instance, waive the players' right to sue Florida teams, in California, for California workers' compensation benefits; and

(c) The applicable language to this effect in the CBA, Implementation Agreement, standard player contracts, CBA Term Sheet, and Guidry Settlement Agreement could not be more "clear and unmistakable."

## AFLPA AND GRIEVANTS

The AFLPA and Grievants contend:

... Arbitrator Wittenberg voluntarily resigned and explicitly relinquished all of her responsibilities as an AFL arbitrator. Pursuant to the CBA, the AFL and AFLPA agreed to appoint Roger Kaplan as the new System Arbitrator, and he in turn appointed you to handle this grievance. The Storm's repeated refrain that Arbitrator Wittenberg is still involved in this grievance ignores these realities. (Footnote omitted.)

The AFLPA and Grievants contend:

... An arbitrator, like a judge, may in an appropriate case recuse himself when there is the potential for bias or even the appearance of impropriety. The Storm does not allege that here. Rather, the Storm seeks a recusal because it disagrees with your Interim Award. That is a flimsy basis for seeking a recusal, one not recognized by any authority we are aware of. The Storm has certainly cited no legal authority in support of its recusal motion. Indeed, it has cited no legal authority at all. Putting aside its baseless argument that Arbitrator Wittenberg is still the Arbitrator and its feeble recusal motion, the Storm makes two substantive points, both of which lack merit.

The AFLPA and Grievants contend that there is no need for a hearing. In support

of this argument, they contend, *inter alia*:

... The Storm has repeatedly argued that the hearing in this matter took place on April 1, 2008. Indeed, the Storm argued in its Memorandum of Law that the hearing held by Arbitrator Wittenberg was properly-conducted - with "extensive argument" because the parties "exhaustively briefed the

Page 9

merits" and "comprehensively argued the very issues of law and fact on which Ms. Wittenberg based her award." *See* Storm Br. dated Mar. 6, 2009, at 4, 10, II; *see also* Interim Award, dated May 15, 2009, at 29 ... The Storm made the same argument in District Court. Indeed, the Storm adamantly contended in court that: (i) because only issues of law were involved, there was no need for a hearing at all; (ii) the April 1, 2008 argument was in fact a hearing in which parties could have presented evidence had they wanted to; and (iii) as a matter of law, no hearing was required, especially because no party had requested one in advance. ...

....

In any event, the record is clear that , until now, the Storm and AFL have never sought any further hearing in this matter, contending, quite the contrary, that the hearing which took place on April 1, 2008 satisfied CBA requirements....

Moreover, the hearing that the Storm now seeks is unnecessary and will only delay the inevitable result. You ruled, *as a matter of law*, that neither Brache nor Daniels breached the CBA, the Implementation Agreement or the Standard Player Contract. *See* Interim Award at 43, 45 ("Interpreting those agreements consistently with *Wright*, the Arbitrator finds that none of them individually or any combination of them waived any right Brache and/or Daniels have had to file a workers' compensation claim in California"). This ruling directly disposes the entirety of the Storm's grievance, thus obviating the need for any further hearings. Moreover, having never before asked you for a hearing, and having always maintained that any required hearing has taken place, the Storm has unmistakably waived any right it may have had to a hearing.

....

[T]he AFLPA has *consistently* taken the position that no hearing is required under the CBA when a grievance is barred by legal principles, and that the Arbitrator is free to dismiss a grievance on legal grounds, just as a court can dismiss a baseless complaint (for example, under Rule 12(b)(6) of the Federal Rules of Civil Procedure). That was the AFLPA's position (i) when it initially sought dismissal and (ii) when it sought reconsideration of Arbitrator Wittenberg's partial non-final Award, and it is the AFLPA's position now, in response to the Storm's latest motion. There is no need for a hearing for the reason that has been consistently advanced by the AFLPA for more than a year and a half in this case: the grievance fails as a matter of law. And, as argued by the AFL, the CBA does not require a hearing if the Arbitrator deems it unnecessary, which is the case here given the legal rulings in the Interim Award. (Footnotes and

Page 10

Exhibit A
Page 12

references to the addition of emphasis and exhibits submitted with the Response omitted without indication.)

The AFLPA and Grievants contend that the Interim Award in not erroneous. In

support of this argument, they contend:

> The Storm contends that the decision is erroneous on the merits because the CBA and Implementation Agreement preclude Storm players from seeking benefits in California. But that is wrong, for the reasons previously briefed by the AFLPA and set forth in the Interim Award. As you ruled, under Supreme Court precedent a union and an employer may not waive the right of a union member to file a statutory claim in court unless such waiver is "clear and unmistakable." *See* Interim Award, at 39-43. The Storm does not appear to contest this ruling. Nor could it.[8]
>
> > [8] In *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), originally trumpeted, but now ignored, by the Storm, the court considered whether a union and employer could, in their collective bargaining agreement, waive the right of an employee to bring a statutory age discrimination claim in federal court, and instead force the employee to arbitrate such a claim. The court ruled that arbitration would be required only if the collective bargaining agreement "*clearly and unmistakably* require[d]" arbitration of the statutory claim. *Id.* at 1473. *See also Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80-81 (1998) (union waiver of a judicial forum for union members to bring statutory claims in favor of arbitration must be "clear and unmistakable").
>
> In this case, there is nothing in the CBA or Implementation Agreement that "clearly and unmistakably" requires any former Storm player to arbitrate statutory workers' compensation claims created by California statutory law. Under *14 Penn Plaza*, that ends the analysis. Indeed, as held in *14 Penn Plaza*, employees' statutory claims can never be subject to arbitration unless there is a "clear and unmistakable" provision in the CBA requiring arbitration of those statutory claims. Here, the CBA does not even *mention* statutory workers' compensation claims (and of course there is no mention of California's statute either), let alone require arbitration of such claims. The *only* worker' compensation claims that are subject to arbitration under the CBA are non-statutory claims for benefits that do not exist by virtue of state law but are created by the CBA itself, namely, claims for "equivalent benefits" under the CBA.
>
> Moreover, in *14 Penn Plaza LLC*, the court made clear that a union and employer could only waive the employee's *procedural* right to bring a

Page 11

Exhibit A
Page 13

statutory claim in a judicial forum, but that the employer and the union could not waive the employee's *substantive* rights created by statute to seek redress for age discrimination. *Id.* at 1469-71. Unlike the procedural right to seek redress in court, the substantive protections of the anti-discrimination laws could not be waived; they would just be heard elsewhere, in arbitration. *Id.*; *see also id.* at 1474 ("a substantive waiver of federally protected civil rights will not be upheld"). This follows settled Supreme Court jurisprudence making clear that unions and employers may never waive state labor laws. *Met. Life Ins. Co. v. Mass.*, 471 U.S. 724, 755-56 (1985) (citations omitted) ("It would further few of the purposes of the Act to allow unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally").

Here, what the Storm is *really* arguing is that the AFLPA and AFL bargained away not only the right to a California judicial forum … but the substantive right to obtain benefits under California law at all, whether in arbitration or in court. This is so because there is no arbitral forum under the CBA for the players to seek benefits available under California's workers' compensation statute, as the Storm well knows. The only workers' compensation benefits available for Storm players in an arbitration conducted under the Implementation Agreement are for "equivalent benefits" created by the CBA (that is, benefits equivalent to those under Florida law had the Storm not exempted itself from Florida's statutory workers' compensation regime). See Implementation Agreement, ¶ 2 ("The workers' compensation rights and benefits to which Florida Team players are entitled are the same as those set forth for other employees in the Florida Workers' Compensation Law").

Because the Implementation Agreement arbitrators have no jurisdiction to make awards under California law, were you to rule in the Storm's favor, as Arbitrator Wittenberg did, the players' claims for workers' compensation benefits under California law would *never* be arbitrated or heard *anywhere*, as there would be no forum in which to arbitrate them. Rather, the players' substantive rights wider California law would simply vanish -- the players could not pursue them in court or any arbitral forum. Such a result would do violence to *14 Penn Plaza*, for the court made clear in that case that unions and employers may never waive an *unwaivable* substantive statutory right. That result would also be barred by *Met. Life Ins. Co. v. Mass.*, 471 U.S. 724, 755-56 (1985), in which the court held that unions and employers may not waive state labor laws that benefit workers.

The Storm does not deny this. It knows that it is not seeking to arbitrate claims for benefits under California law, but rather, to deprive all of its former players of those benefits in any forum. The Storm nonetheless continues to disingenuously couch its argument as one

Page 12

concerning the "arbitrability" of California workers' compensation claims, not the waiver of substantive statutory rights under California law, which would be plainly impermissible under *14 Penn Plaza*, *Met. Life*, and other Supreme Court authority.

The AFLPA and Grievants request the Arbitrator issue a final award incorporating

his Interim Opinion and Award as an exhibit and declare this matter *functus officio*, so

that the AFLPA can seek to confirm the final Award in court.

## DISCUSSION

The issues to be resolved in this Opinion and Award are those raised in the Storm's Motion for Recusal and/or Reconsideration with certificate of service dated July 17, 2009, that is whether the Arbitrator should recuse himself and/or reconsider the decision set out in the Interim Opinion and Award. The Arbitrator will deny the motion, deny the grievance and direct the remedy set out below. The Arbitrator's reasoning follows.

### Whether the Interim Opinion and Award
### Violated Article IX, Section 1(c) of the 2004 Agreement

The Storm correctly argues that Article IX, Section 1(c) of the 2004 Agreement prohibits the Arbitrator from modifying that Agreement in any manner. The difficulty with the Storm's argument is that the Arbitrator did not do so.

The Storm argues at length that the 2004 Agreement, the Implementation Agreement and the Standard Player contract clearly and unmistakably waive Florida team players' rights to sue Florida teams for out-of-state workers' compensation benefits. The Arbitrator differs. As the Arbitrator pointed out in the Interim Opinion and Award, Florida team players had no statutory right to file workers' compensation claims in that state because the Florida Workers Compensation Law defined "employment" as excluding the services of "professional athletes, such as professional ... football ... players". Article XXXIX, Section 1 of the 2004 Agreement and the Implementation Agreement created a contractual right, that is a contractual guarantee of a benefit equivalent to that to which injured players would have been entitled if the Florida Workers' Compensation law did not exclude them from coverage, but, as pointed out in the Interim Opinion and Award, the instant grievance does not relate to that contractual

Exhibit A
Page 16

right. Rather, the instant grievance relates to the <u>statutory</u> right either or both of the Grievants may have to file a workers' compensation claim in a state other than Florida, specifically in California.

The Storm has cited the Arbitrator to several provisions in the 2004 Agreement, the Implementation Agreement and the Standard Player Contract that it claims clearly and unmistakably waive Florida team players' rights to file workers' compensation claims in states other than Florida. The Arbitrator need not discuss each of the cited provisions; Section 14 of the Implementation Agreement contains the strongest language, from the Storm's perspective. It provides in pertinent part: "Notwithstanding anything else in this Agreement, the terms of this Agreement shall only apply to resolve any and all workers' compensation claims for injuries occurring in or after the 2003 League Year".[3] When one reads that language in accordance with the arbitration provisions of the 2004 Agreement, the Implementation Agreement and the Standard Player Contract, he/she could conclude that the drafters of those documents intended to prohibit players subject to the Implementation Agreement from filing workers' compensation claims in states other than Florida, but the language does not clearly and unmistakably convey that meaning. One could reasonably, indeed easily, read the quoted language as relating only to claims for the contractual benefit noted above, that is for Florida-equivalent benefits. Certainly the drafters of Section 14 of the Implementation Agreement could have chosen words that would have more specifically and clearly conveyed the prohibition the Storm now contends they intended. They

---

[3] Storm Doc I-4. (See footnote 1 in the Interim Opinion and Award.)

chose not to clearly refer to workers' compensation rights afforded by states other than Florida, however.

For the above reasons, the Arbitrator finds that his decision in the Interim Opinion and Award that neither the 2004 Agreement, the Implementation Agreement nor Brache's and Daniels' AFL Standard Player Contracts individually or any combination of them clearly and unmistakably waived any right Brache and/or Daniels may have had to file a workers' compensation claim in California was not erroneous. The Arbitrator concludes that the Interim Opinion and Award did not violate Article IX, Section 1(c) of the 2004 Agreement, as alleged by the Storm.

### Whether Arbitrator Clarke Improperly Disregarded
### Persuasive if not Binding Precedent from Other AFL-AFLPA Arbitrators

Initially, the Arbitrator notes that the Storm has cited nothing that even suggests much less holds that any arbitration decision cited by it constituted binding precedent.

The Arbitrator discussed situations in which an arbitrator should resolve a grievance in accordance with a prior arbitral decision involving the same issue between the same parties at the same facility at pages 36 – 37 of the Interim Opinion and Award. It is sufficient to note here that Melvin Cunningham vs. The Tampa Bay Storm, cited by the Storm, did not involve the issue in this case, that is whether the 2004 Agreement, Implementation Agreement and/or Standard Player Contract waived the statutory rights of Florida team players to bring workers compensation claims in states other than Florida. Rather, that decision involved the contractual right afforded Florida team players to Florida law-equivalent workers' compensation benefits.

The Arbitrator concludes that he did not improperly disregard arbitral precedent in issuing the Interim Opinion and Award.

Exhibit A
Page 18

### Whether Arbitrator Clarke Violated
### Article IX, Sections 3(a) and 4(b) of the 2004 Agreement

As noted in the Interim Opinion and Award at page 15, following a telephone conference call among counsel and the Arbitrator on February 13, 2009, the Arbitrator directed the parties to brief the following questions:

> 1.    A. Am I required to be bound by Arbitrator Wittenberg's decisions in this case of June 18, 2008 and August 6, 2008, and if so, to what extent?
>
> B. Should I be bound by Arbitrator Wittenberg's decisions, and if so, to what extent?
>
> 2.    A. In view of Arbitrator Wittenberg's having resigned, must I start anew with respect to this grievance?
>
> B. In view of Arbitrator Wittenberg's having resigned, should I start anew with respect to this grievance?

In the Interim Opinion and Award, the Arbitrator decided not only that he was not required to follow System Arbitrator's June 18 and August 6, 2008 decisions and that he should not do so but also that neither individually nor in any combination did the 2004 Agreement, the Implementation Agreement or Brache's or Daniels' AFL Standard Player Contract set forth a waiver of a player's right, if any, to file a workers' compensation claim in California.[4] Nonetheless, the Arbitrator did not exceed the scope of the issues briefed by the parties. The conclusion set out in the second preceding sentence is the reason underlying the Arbitrator's conclusion that he should not follow System Arbitrator Wittenberg's decisions. As stated at page 40 of the Interim Opinion and Award, analysis of System Arbitrator Wittenberg's June 18 decision in light of relevant case law, especially the Supreme Court's decisions in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998) and *14 Penn Plaza, LLC v. Pyett*, 129 U.S.

---

[4] Interim Opinion and Award at 45.

Exhibit A
Page 19

1456 (2009), show that she erred in her June 18, 2008 decision. In other words, the finding that the Storm objects to was necessary to resolution of the issue that the Arbitrator had previously directed the parties to brief. Moreover and as suggested at page 40 of the Interim Opinion and Award, the Storm first raised the issue of the application of *14 Penn Plaza* to the instant case.[5]

Unless the 2004 Agreement, the Implementation Agreement and/or the Standard Player Contract prohibit players subject to the Implementation Agreement from filing workers' compensation claims in states other than Florida, the instant grievance must be denied. However, as stated in the Interim Opinion and Award, the Arbitrator must interpret the 2004 Agreement, the Implementation Agreement and the Standard Player Contract consistently with *Wright*. In other words, unless one of those documents singly or some combination of them clearly and unmistakably waives Florida team players' rights to file workers' compensation claims in states other than Florida, the Arbitrator must find that no such waiver exists. Resolution of that question turns on the language of those three documents, each of which is already in evidence.

Prior to issuance of the Interim Opinion and Award, the Storm maintained that no additional hearing was needed because System Arbitrator Wittenberg had conducted a full hearing on April 1, 2008.[6]

Given its unique circumstances, this case is not one wherein an evidentiary hearing is "appropriate", within the meaning of Article IX, Section 1(a) of the 2004 Agreement.

---

[5] *See* Petitioner's Supplemental Memorandum of Law with certificate of service dated March 15, 2009 at 4-6; *see also* Interim Opinion and Award at 40.

[6] *See* Petitioner's Supplemental Memorandum of Law with certificate of service dated March 15, 2009 at 6-9; *see also* Interim Opinion and Award at 29.

For the above reasons, the Arbitrator concludes that he did not violate Article IX, Sections 3(a) and/or 4(b) in issuing the Interim Opinion and Award.

**Whether Arbitrator Wittenberg Has Jurisdiction over Any Aspect of this Case**

As noted in the Procedural History of the Interim Opinion and Award at page 13, System Arbitrator Wittenberg resigned from the position of System Arbitrator and the AFL and AFLPA appointed Roger P. Kaplan as System Arbitrator. As noted at page 15, System Arbitrator Kaplan delegated the instant grievance to the undersigned for resolution. The net effect of these moves is that former System Arbitrator Wittenberg had no jurisdiction over any aspect of this grievance. Contrary to the Storm's argument, the last sentence of Article IX, Section 7 of the 2004 Agreement does not provide otherwise. It does not relate to resignation by the System Arbitrator.

For the above reasons, the Arbitrator denies the Storm's Motion for Recusal and/or Reconsideration with certificate of service dated July 17, 2009. Furthermore, having determined that neither the 2004 Agreement, the Implementation nor the Standard Player Contract singly or any combination of them prohibited either of the Grievants from filing a workers' compensation claim against the Storm in the State of California and having received no request for further proceedings except the Storm's motion, the Arbitrator must deny the instant grievance.

Exhibit A
Page 21

## AWARD

Having read and carefully reviewed the evidence and argumentative materials in this case and in light of the above Discussion, the Arbitrator finds that the Motion for Recusal and/or Reconsideration with certificate of service dated July 17, 2009 is without merit and denies it.

In light of the above Discussion and the Discussion set out in the Interim Opinion and Award, the Arbitrator finds that the neither the 2004 Agreement, the Implementation nor the Standard Player Contract singly or any combination of them prohibited either of the Grievants from filing a workers' compensation claim against the Storm in the State of California. The Arbitrator therefore denies the grievance filed by Robert W. Bleakley, Esq. on behalf of the Storm with certificate of service dated October 25, 2007.

Dated: December 9, 2009

Jack Clarke, Arbitrator
Montgomery, Alabama

Exhibit A
Page 22

| IN THE MATTER OF THE ARBITRATION BETWEEN | * | GRIEVANCE: WORKERS |
|---|---|---|
| | * | COMPENSATION - FLORIDA |
| | * | |
| ARENA FOOTBALL LEAGUE, LLC | * | |
| AND | * | |
| PIGSKIN, LLC D/B/A THE TAMPA BAY STORM | * | |
| | * | |
| | * | GRIEVANTS: IGNACIO BRACHE AND |
| V. | * | RONNEY DANIELS |
| | * | |
| | * | |
| ARENA FOOTBALL LEAGUE | * | |
| PLAYERS ASSOCIATION | * | |
| AND | * | |
| IGNACIO BRACHE AND RONNEY DANIELS | * | ARBITRATOR'S FILE NO: 2009.3047 |

## INTERIM OPINION AND AWARD

### ARBITRATOR: JACK CLARKE

### AWARD DATE: MAY 15, 2009

## APPEARANCES FOR THE PARTIES

**AFL AND STORM**

Robert W. Bleakley, Esq., The Bleakley Law Firm, Tampa, Florida
John J. Master Esq., Executive Vice President & General Counsel, Arena Football League, New York, New York
Jennifer P. O'Sullivan, Esq., Vice President, Legal & Labor Affairs, Arena Football League, New York, New York

**AFLPA AND PLAYERS**

Adam J. Kaiser, Esq., Dewey & LeBoeuf, LLP, New York, New York
Todd Flanagan, Esq., Staff Counsel, AFL Players Association, Washington, D.C.

Exhibit A
Page 23

## PROCEDURAL HISTORY

Pigskin, LLC d/b/a The Tampa Bay Storm is hereinafter referred to as "Storm". The Arena Football League, LLC is hereinafter referred to as "AFL". The Arena Football League Players Association is hereinafter referred to as "AFLPA". Ignacio Brache and Ronney Daniels are hereinafter referred to individually as "Brache" and "Daniels", respectively, and collectively as "Grievants".

Brache and Daniels each played football for the Storm, and each signed an Arena Football League Standard Player Contract (hereinafter "AFL Standard Player Contract").[1,2] Brache signed for the 2004 season, and Daniels signed for the 2005 season. Each claimed to have sustained injuries as a result of playing, and each filed a claim with the California Workers' Compensation Appeals Board.[3] Brache filed on or about March 2, 2006, and Daniels did so on or about August 7, 2007. It is undisputed that neither filed a claim in accordance with the procedures established in accordance with Article XXXIX "Workers' Compensation", Section 5 "Florida Equivalent Benefits" of

---

[1] Counsel for the Storm provided the Arbitrator with two books of exhibits under cover of a letter from Laurel Whiteside, Paralegal, dated February 11, 2009. Hereinafter, the Arbitrator will identify these documents as "Storm Docs" in the order arranged in the exhibit books. For example, the first document, excerpts from the Guidry Settlement, will be identified as Storm Doc I-1; AFLPA's reply to the instant grievance, the third document in the third section, will be identified as III-3; and the Storm's reply to AFLPA's Motion to Dismiss, the fourth and final document in the fifth and final section, will be identified as V-4. The Arbitrator notes that the index to the Storm Docs should show the sections as I, II, III, IV and V.

Adam J. Kaiser, Esq., counsel for ALFPA and the Grievants, submitted a letter brief to the Arbitrator dated February 3, 2009 with Exhibits A through J, wherein he argued, among other issues, that the undersigned should dismiss the grievance for lack of subject matter jurisdiction. The Arbitrator will identify these documents as "Player Docs" with the corresponding exhibit letter.

[2] Storm Docs I-5 for Brache and I-6 for Daniels.

[3] Exhibits G (Daniels) and H (Brache) to Storm Docs III-1, the Storm's October 25, 2007 grievance.

the Collective Bargaining Agreement between the AFL and the AFLPA dated January 9, 2004 and effective that date except as provided for in its Article XLIII "Term of Agreement", Section 2 "Effective Date" (hereinafter "2004 Agreement") or the Implementation Agreement for the Arbitration of Florida Workers Compensation Claims dated February 27, 2003 (hereinafter "Implementation Agreement").[4]

Robert W. Bleakley, Esq., initiated the instant grievance on behalf of the Storm by filing it, with certificate of service dated October 25, 2007, with Carol Wittenberg, then System Arbitrator[5] (hereinafter "System Arbitrator Wittenberg") as provided for in Article IX "Non-Injury Grievance" of the 2004 Agreement,.[6,7] The grievance set out three counts --- one against the AFLPA and one each against Brache and Daniels. The Storm sought the following relief against the AFLPA:

---

[4] The Implementation Agreement appears as Storm Docs I-4. It was executed on behalf of the AFL, AFLPA and class counsel in *Guidry, et al v. Arena Football League, LLC, et al*, (D. N.J.) CA No. 0053 (JCL). At this point, it is sufficient to note that the Implementation Agreement "deals with local processing of workers' compensation claims made to the Orlando Predators and the Tampa Bay Storm (each, a "Florida Team")."

A document styled Implementation Agreement Regarding Local Processing of Miami Dolphins Workers' Compensation Claims dated December 20, 1985 appears as Player Docs Exhibit A. Although it is referred to in Article XXXIX "Workers' Compensation" of the 2004 Agreement, it is not binding on the parties to this arbitration.

[5] The 2003 Agreement defines "System Arbitrator" in Article I "Definitions", item (ffff) and refers to the office in the following: Article VII, "Player Security"; Article IX "Non-Injury Grievance"; Article X "Injury Grievance"; Article XIII "Player Safety, Housing & Facilities"; Article XIV "AFL Player Contract"; Article XVII "Franchise Players"; Article XIX "Salary Cap, Minimum Team Salary & Guaranteed League-Wide Player Compensation"; Article XX "Enforcement of Salary Cap"; Article XXI "Anti-Collusion"; Article XXII "Certification"; and Article XLIII "Term of Agreement".

[6] Excerpts from the 2004 Agreement appear as Storm Docs I-3. However, as a grievance arbitrator selected in accordance with Article IX, Section 1(a) of that Agreement, the Arbitrator has a complete copy in his own files.

[7] The grievance appears as Storm Docs III-1 (unsigned and undated) and Player Docs Exhibit B (without exhibits).

Page 2

> [E]ntry of an Order: (a) granting or otherwise approving the instant Grievance; (b) compelling the AFLPA to require CBA compliance in all workers' compensation claims by player members. including but not limited to Mr. Daniels and Mr. Brache, against the Storm; (c) directing the AFLPA to affirmatively prohibit the filing or continuation of any such California claims against the Storm, (d) in the alternative, ordering the AFLPA to pay money damages for any award of California benefits that exceeds comparable "equivalent benefits" under the CBA and Florida law; and (e) requiring the AFLPA to reimburse the Storm's costs and attorney's fees arising from the unauthorized California claims.

Against Daniels, the Storm sought:

> [E]ntry of an Order: (a) granting or otherwise approving the instant Grievance; (b) compelling Mr. Daniels to conform his workers' compensation claims to the mandatory terms and conditions of the comprehensive CBA; (c) directing Mr. Daniels to withdraw, terminate or otherwise dismiss any non-conforming claim against the Storm, including but not limited to his application for California benefits; (d) in the alternative, ordering Mr. Daniels to forebear collection of any award of California benefits that exceeds comparable "equivalent benefits" under the CBA and Florida law; and (e) requiring Mr. Daniels to reimburse the Storm's costs and attorney's fees arising from his unauthorized California claims.

The Storm asked for substantially identical relief against Brache.

The AFLPA replied by letter from Todd Flanagan, Esq., AFLPA Staff Counsel,

dated November 15, 2007.[8] Flanagan wrote in part:

> This letter is in answer to the above captioned grievance filed on October 29, 2007. The Arena Football League Players Association (AFLPA) denies the grievance in its entirety.
>
> The AFL and the AFLPA do not possess the authority to undercut any state's jurisdiction over minimum labor standards, including but not limited to, workers compensation requirements.
>
> Further, the Implementation Agreement for the Arbitration of Florida Workers' Compensation Claims (Agreement) was negotiated between the Arena Football League, LLC (AFL) and the AFLPA in order to provide a mechanism to resolve "any issue or disputes, which may arise between the Florida Teams and the player through a fair and reasonable application of the Florida Workers Compensation Law." (Agreement, § 2).

---

[8] Storm Docs III-2 (incomplete) and Player Docs Exhibit C.

Page 3

The Agreement only applies to claims made to Florida Teams seeking equivalent benefits as defined by Florida workers' compensation law. The Agreement specifies that "[t]he rulings and decisions issued by the arbitrators appointed under this Agreement shall be applicable only to Florida workers' compensation claims arising under Article XV of the Settlement Agreement and shall have no application to other Articles of the Settlement Agreement or to other teams which may come under the provision of Article XV in the future." (Id, § 9). Clearly, the Agreement does not apply, was never intended to apply, nor can it apply, to a workers' compensation claim based on another state's law. ("[ ]" marks in original.) (Footnote omitted.)

Without a hearing, System Arbitrator Wittenberg denied the grievance in a letter

to Bleakley and Flanagan dated November 26, 2007.[9] She wrote:

> I have reviewed the Storm's grievance and the Association's response. I conclude that I do not have jurisdiction over the workers' compensation claims filed by Ronney Daniels and Ignacio Brach in the state of California. My jurisdiction is limited to claims made to Florida teams under the "Implementation Agreement for the Arbitration of Florida Workers Compensation Claims." The intent of the Implementation Agreement is stated in the first paragraph of the Agreement. Specifically, it provides procedures to determine "the equivalent benefits" under the Florida Workers' Compensation Law.
>
> In addition, Section 9 of the Implementation Agreement states that arbitral rulings and decisions "shall be applicable only to Florida workers' compensation claims arising under Article XV of the Settlement Agreement..." Nowhere does the Implementation Agreement indicate that it applies to an individual player's workers' compensation claim in another state. Any claims the Storm may have with regard to the filing of these workers' compensation claims by Ronney Daniels and Ignacio Brache in the state of California, including damages, must be pursued in the appropriate state forum.

Bleakley addressed a letter to System Arbitrator Wittenberg dated December 13,

2007.[10] He wrote:

---

[9] Storm Docs III-3 and Player Docs Exhibit D.

Page 4

On behalf of Pigskin Inc. LLC, d/b/a Tampa Bay Storm, I received your November 26, 2007 letter proclaiming that you, as System Arbitrator, do not have jurisdiction over the grievance I filed on behalf of the Team on or about October 25, 2007. The Team is specifically requesting you permit it oral argument *before* summarily rejecting its arguments on this important matter.

Your letter seemingly overlooks important language within the Implementation Agreement clearly mandating that all workers' compensation claims against the Florida teams be processed through the arbitration system established in the agreement. For example, the very first paragraph to which you allude in your letter, provides:

> "This Agreement by and between the Arena Football League, LLC, the Arena Football League Players' Association... deals with the local processing of workers' compensation claims made to the Orlando Predators and the Tampa Bay Strom (each a "Florida Team"). It is the intention of the parties that these procedures determine in each player's case the equivalent benefits referred to in Article XV, Section 5 of the Settlement Agreement."

Thus, in very plain language, the parties described their intent that the implementation agreement cover all workers' compensation claims against the Orlando Predators and the Tampa Bay Storm, not just those that are filed in the State of Florida.

Moreover, Section 2 of the Implementation Agreement plainly enumerates the rights and benefits "to which Florida Team players are entitled." That section provides a Florida team players' rights "are the same as those set forth for other employees in the Florida Workers' Compensation Law, as amended, and as interpreted in the Florida Courts except as modified by this Agreement and the Settlement Agreement".

In our view, without question, the Implementation Agreement, as plainly worded, applies to all players' claims against the Florida Teams. Again, my client requests a hearing on this issue so that it may preserve all other legal rights and remedies against the parties that are continually violating the agreement.

Flanagan addressed a letter to System Arbitrator Wittenberg dated January 18,

2008.[11] He wrote:

> This letter is in answer to the Storm's request for oral argument dated December 13, 2007 in the above captioned grievance.

---

[10] Storm Docs III-4.

[11] Storm Docs III-5.

We respectfully ask that you refuse the Club's request for the following reasons: 1) well settled Supreme Court precedent has established that states retain jurisdiction over minimum labor standards; and 2) the *Implementation Agreement For the Arbitration of Florida Workers' Compensation Claims* (Agreement) does not prohibit, and cannot be construed to prohibit, injured workers from filing in states other than Florida.

In arguing that the Agreement is the exclusive method for resolving all workers compensation claims for Florida players, the Storm is implicitly claiming that the Agreement, a product of federal labor law, preempts state jurisdiction in this matter. However, this argument has been rejected by the Supreme Court: In <u>Metropolitan Life Ins. Co. v. Massachusetts,</u> Justice Blackmun held:

> [I]t has never been argued successfully that minimal labor standards imposed by other federal laws were not to apply to unionized employers and employees. Nor has Congress ever seen fit to exclude unionized workers and employers from laws establishing federal minimal employment standards. We see no reason to believe that ... Congress intended state minimum labor standards to be treated differently from minimum federal standards.

471 U.S. 724, at 755. Included in the Courts definition of "minimum labor standards" are state laws covering workers' compensation requirements. (Id. at 756).

The holding in <u>Metropolitan</u> was based on the Court's recognition that states have "authority under their police powers to regulate the employment relationship to protect workers within the State." (Id.).

In this instance, the Agreement entered into between the Arena Football League, LLC (AFL) and the Arena Football League Players' Association (AFLPA) does not preempt California's authority to regulate workers. The Agreement is not exclusive because it cannot be exclusive. Moreover, the Agreement was not supposed to be, or purported to be, exclusive. The parties to the Agreement do not have the authority to oust any state's jurisdiction in this matter.

Given the clear holding in <u>Metropolitan,</u> the Club's request for oral argument should be denied. However, even if federal law was silent on this matter, the plain language of the Agreement does not support the Club's claim; nor can the language be construed to support the Club's claim. Rather, the Agreement only applies to claims made by Florida players that are based on Florida law.

The Agreement was entered into between the AFL and the AFLPA in order to provide a mechanism to resolve "any issue or disputes, which may arise between the Florida Teams and the player through a fair and

Exhibit A
Page 29

reasonable application of the Florida Workers Compensation Law." (§ 2). Further, "[t]he rulings and decisions issued by the arbitrators appointed under this Agreement shall be applicable <u>only</u> to Florida workers' compensation claims..." (§ 9) (emphasis added).

The Agreement applies Florida law to determine the benefits a player is entitled to receive based on a Florida workers compensation claim. The Agreement does not apply any other state's law or encompass any other state's claim. By arguing that the "rulings and decisions issued by the arbitrators" are also applicable to California claims based on California law, the Club is disputing the Agreement's plain language and is asking you to construe the document beyond all reasonable limits.

If the Storm questions whether these claims are properly filed in California, they should raise that defense in the appropriate California court. A non-injury grievance is not the appropriate mechanism to resolve that issue.

For the foregoing reasons, we ask that you refuse the Storm's request for oral argument and affirm your decision dated November 26, 2007. Both the facts and the law in this grievance are clear. Oral argument will adduce no additional facts nor can it overcome controlling Supreme Court precedent. Federal law allows state jurisdiction in this instance. Further, the Agreement only applies to Florida claims based on Florida law. The language of the Agreement is unambiguous and not susceptible to any other reasonable interpretation. Oral argument will not develop any new evidence; it will only cause each side to needlessly devote more time and resources to this grievance. (Emphasis and "[ ]" marks in original.) (Footnote omitted.)

The Storm submitted a Memorandum of Law in Support of Petitioner's Grievance and/or Reply to Respondent's Answer with certificate of service March 28, 2008 to System Arbitrator Wittenberg.[12]

System Arbitrator Wittenberg conducted a "hearing or oral argument" in New York, New York on April 1, 2008.[13] The Storm, the AFL and the AFLPA were each represented by counsel. Counsel for the Storm, for the AFL and for the AFLPA each

---

[12] Storm Docs III-6.

[13] A copy of the transcript of the April 1, 2008 oral argument appears as Storm Docs IV-2. Hereinafter, that transcript will be referred to as "Tr. 4.1.2008". The quotation appears at Tr. 4.1.2008 at 3.

spoke. No evidence was offered during the hearing, but System Arbitrator Wittenberg noted: "I asked if there was any authority, legal authority, and both of you have submitted legal authority to me, so everything that I have received from either side is accepted and received in evidence."[14]

System Arbitrator Wittenberg issued a decision dated June 18, 2008.[15] In the section entitled "Opinion", she wrote in part:

> The Agreement specifically addresses players' claims for workers' compensation benefits under Article XXXIX, Section 1. That section provides that workers' compensation benefits "will (emphasis added) be equivalent to those benefits paid under the compensation law of the State in which (the) Team is located." There is no carve out of any workers' compensation claims under Section 1. Therefore, the Arbitrator finds that the language of the Agreement clearly and unequivocally contains a clause requiring the parties to arbitrate all workers' compensation claims connected with a player's employment with a Florida team through arbitration.
>
> This language is clear and unambiguous in providing equivalent benefits to players under the workers' compensation law "of the state in which (the) Team is located." In this case, the language provides that Team players, namely, Ronney Daniels and Ignacio Brache, are entitled to benefits equivalent to what other employees receive in the state of Florida under Florida's Workers' Compensation Law.
>
> The Arbitrator finds that the claims in question clearly arise under the specific terms of the Agreement and must be resolved through the procedures established under the Implementation Agreement. The Implementation Agreement, which the parties negotiated, deals directly with the processing of workers' compensation claims involving teams in the state of Florida. The parties' intent is clear from the language in the Implementation Agreement, namely, to establish a procedure to provide Florida players to equal benefits to those to which they would be entitled under Florida law.
>
> There is no other plausible purpose of the Implementation Agreement other than to cover the processing of workers' compensation claims of Florida players against Florida teams. To rule as the Association urges would be to render the Implementation Agreement meaningless. If

---

[14] Tr. 4.1.2008 at 3-4.

[15] Storm Docs IV-1 and Player Docs Exhibit E.

Page 8

the parties did not intend for Florida players to be bound by the Implementation Agreement, there was no reason for the parties to have entered into negotiations for its terms. The Arbitrator finds that the parties clearly intended the Implementation Agreement to apply to all workers' compensation claims of Florida players.

Section 3. of the Implementation Agreement is perfectly clear in providing that when a dispute arises which cannot be resolved, "The procedures set forth below, including arbitration..." will be followed so that parties may achieve a swift, final and binding resolution of the dispute." The word "will" is not equivocal. It requires compliance.

The intent of the Implementation Agreement is also evident from a reading of other clauses, including the one providing for the establishment of a panel of arbitrators to determine equivalent benefits to which players are entitled. The Arbitrator finds that the parties did not establish this elaborate mechanism without intending that it be used to resolve the workers' compensation disputes of Florida players.

The inclusive language of the Implementation Agreement, read together with the specific language in the Agreement, referring to workers' compensation rights, supports the Arbitrator's conclusion here that the workers' compensation claims of the players arise under the Agreement and that the players are contractually required to arbitrate those claims under the terms of the Implementation Agreement. There is no language in either the Agreement or the Implementation Agreement that carves out those disputes from coverage.[16]

After commenting on Sections 19, 20 and 21 of the AFL Standard Player Contract,

System Arbitrator Wittenberg continued:

There is no final resolution of the players' claims and, therefore, the issue of any potential remedy is not yet ripe. The System Arbitrator retains jurisdiction of this matter until there is a resolution of the players' pending cases in the state of California.

The Team has also made a claim against the Association, namely, that it violated the Agreement by failing to use its "best efforts" to enforce the terms of the Agreement. The Association denies these allegations, contending that it does not have the authority to prevent players from filing workers' compensation claims in other states. To the extent that the Team seeks a finding that the Association violated the Agreement, there must be an evidentiary hearing on that issue.[17]

---

[16] Id. at 8-12.

[17] Id. at 13.

She concluded her opinion:

> Finally, in making their arguments, the parties cited a number of court decisions, including decisions issued by the U.S. Supreme Court, the most recent being <u>Preston v. Ferrer</u>. The Arbitrator has reviewed all of the cases cited by the parties and concludes that her decision is consistent with court precedent, particularly precedent established by the U.S. Supreme Court. The decision herein supports court decisions that have determined that there is a national policy favoring arbitration where the parties, as they have here, agreed to arbitrate all issues under an agreement. In this case, the collective bargaining agreement is a contract which is subject to the Federal Arbitration Act. And, there is no question regarding the validity of the Agreement and the Implementation Agreement as well as their applicability to the parties, including individual players. Finally, the parties specifically agreed to arbitrate the matter under dispute, making the Agreement the exclusive method for the players to resolve any workers' compensation claims with the Team.[18]

System Arbitrator Wittenberg made the following Award:

> The grievance is sustained. Ronney Daniels and Ignacio Brache violated the collective bargaining agreement when they filed their workers' compensation claims against The Tampa Bay Storm in the state of California. The Arbitrator retains jurisdiction of this matter, including the issue of whether the Association violated the Agreement, until the pending case in California is resolved.[19]

Adam J. Kaiser, Esq., counsel for the AFLPA, addressed a 10-page letter to

System Arbitrator Wittenberg dated July 18, 2008.[20] He began:

> This firm is counsel to the Arena Football League Players Association ("AFLPA") in connection with the above-captioned matter. We are writing regarding the Award you issued on June 18, 2008 (the "Award"). The AFLPA was, frankly, shocked that you sustained the Tampa Bay Storms ("Storm") grievance because, as explained below:
>
> (I) Article IX of the CBA <u>requires</u> that, in every grievance, you conduct a full evidentiary hearing, and only after discovery is completed. The CBA was ignored in every respect here. There has been no discovery, and no hearing. No party submitted any evidence on any issue. To the contrary, the parties appeared before you on April 1, 2008 for the

---

[18] <u>Id</u>. at 13-14.

[19] <u>Id</u>. at 14.

[20] Storm Docs IV-3.

Page 10